UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------------

|  |  |  |
|---|---|---|
| | : | |
| MICHAEL STANSELL, | : | CASE NO. 1:17-cv-1892 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | OPINION & ORDER |
| | : | [Resolving Doc. 35] |
| GRAFTON CORRECTIONAL | : | |
| INSTITUTE, | : | |
| | : | |
| Defendant. | : | |
| | : | |

------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Michael Stansell is a state prisoner at Grafton Correctional Institution ("Grafton").[1]  He sues Grafton, alleging that, due to his medical conditions, he requires a single-person cell so that he has access to a toilet at all times.[2]  By "forc[ing] [him] to endure a cellmate," he claims that Grafton violates the Americans with Disabilities Act, the Rehabilitation Act, and the U.S. Constitution.[3]

On November 26, 2019, Defendant moved for summary judgment.[4]  Plaintiff opposed.[5]

Because Plaintiff did not bring his claims within the statutes of limitations, the Court **GRANTS** Defendant's motion for summary judgment.

---

[1] Doc. 1 at 1.
[2] *Id.* at 2-3.
[3] *Id.* at 2-5.
[4] Doc. 35.
[5] Doc. 41.  Defendant replied.  Doc. 44.  Plaintiff filed a sur-reply.  Doc. 47.

## I. Background[6]

Plaintiff Michael Stansell is a prisoner at Grafton.[7] Stansell had a 2013 colostomy, followed by a 2014 stoma reversal.[8] With his complaint, Plaintiff Stansell alleges that his medical conditions impair his ability to sense the need to defecate and that he therefore needs access to a toilet at all times.[9]

On July 4, 2015, Plaintiff filed an "Inmate Reasonable Accommodations Request" form with Grafton's ADA Coordinator.[10] In it, he requested a formal ADA accommodation that would give him a cell without a cellmate ("a single cell").[11]

On July 7, 2015, before Stansell received a response, Grafton assigned Stansell a cellmate.[12]

On July 9, 2015, Grafton formally responded to Stansell's Inmate Reasonable Accommodations Request form.[13] The Warden partially granted Plaintiff's request based on the ADA Coordinator's recommendation:

> Per Dr. Houglan, there is not a medical need for inmate Stansell . . . to have a single cell. I do [feel] however that it would be appropriate to move . . . Stansell into an even numbered pod . . . and grant him permission to use the handicap restroom in the event his cell toilet is in use.[14]

---

[6] The Court draws this section's factual allegations from Plaintiff's complaint.
[7] Doc. 1 at 1.
[8] *See* Doc. 1-3 at 1.
[9] *See id.* Prison officials say that there is "no [medical] documentations to confirm [Stansell's] statement of having no sensation of when to defecate." *Id.* at 12.
[10] *Id.* at 1.
[11] *Id.*
[12] *Id.* at 5.
[13] *Id.* at 2.
[14] *Id.*

Plaintiff appealed this outcome to the Ohio Department of Rehabilitation and

Correction's central Special Needs Assessment Committee.[15]  With that appeal, Stansell

explained why he believed Grafton's partial grant of his request was inadequate:

> As a result of [my medical conditions], I require immediate access at all times
> to a toilet.  Having a second person in the cell obstructs that access.  The
> proposed solution, uprooting me from my cell in which I have been for well
> over a year, and moving me to what is known to be a much worse housing
> unit, will not only not resolve the problem, because the handicap bathroom
> is not only nasty, but also frequently occupied, and will not afford the
> requisite immediate access . . . .[16]

On August 5, 2015, the Special Needs Assessment Committee denied Plaintiff's

appeal, referencing Grafton medical staff's opinion that Stansell did not "have a medical

need for a single cell."[17]

Plaintiff submitted numerous other administrative grievances seeking a "single cell

accommodation."[18]  None have been successful.[19]

More than two years later, and on September 8, 2017, Plaintiff sued Grafton for

denying him a single cell.[20]  He asserted claims under the Americans with Disabilities Act

("ADA"),[21] § 504 of the Rehabilitation Act ("RA"),[22] and the Eighth Amendment of the U.S.

Constitution.[23]

---

[15] *Id.* at 3.
[16] *Id.*
[17] *Id.* at 4.
[18] *Id.* at 5-24.
[19] *Id.*
[20] Doc. 1.
[21] 42 U.S.C. § 12101.
[22] 9 U.S.C. § 794(a).
[23] U.S. CONST. amend. VIII.

On February 20, 2018, the Court screened Plaintiff's complaint under 28 U.S.C. §1915(e) and dismissed all claims.[24]  The Court dismissed the ADA and RA claims because Plaintiff Stansell did not allege that Grafton "interfered with his participation in or receipt of a benefit from a service, program or activity."[25]

The Sixth Circuit rejected this conclusion and vacated the Court's dismissal of Plaintiff's ADA and RA claims (but not the dismissal of the Eighth Amendment claim).[26] The Sixth Circuit explained, "While we have not expressly determined that access to a toilet is a service, program, or activity, we have concluded 'that the phrase 'services, programs, or activities' encompasses virtually everything that a public entity does.'"[27]

On remand, the Court effected service of Plaintiff's complaint.[28]

On November 26, 2019, Defendant moved for summary judgment on Plaintiff's remaining ADA and RA claims.[29]  Plaintiff opposed.[30]  Defendant replied.[31]  Plaintiff filed a sur-reply.[32]

## II.  Motion for Summary Judgment Standard

Summary judgment is appropriate where the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.[33]  In response to a summary judgment motion properly supported by evidence, the

---

[24] Doc. 4.
[25] *Id.* at 4.
[26] Doc. 9.
[27] *Id.* at 2 (quoting *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998)).
[28] Doc. 13.
[29] Doc. 35.
[30] Doc. 41.
[31] Doc. 44.
[32] Doc. 47.
[33] Fed. R. Civ. P. 56(a).

nonmoving party is required to present some "significant probative evidence which makes

it necessary to resolve parties' differing versions of the dispute at trial."[34]  The Court

construes all evidence in the light most favorable to the nonmoving party.[35]

### III.  Discussion

Grafton Prison moves for summary judgment, arguing, *inter alia*, that Plaintiff's

ADA/RA claims expired before Stansell filed this action.  Defendant Grafton also argues

that it is immune under the Eleventh Amendment.[36]

### A.  Plaintiff's Claims Are Time-Barred.

Neither the ADA nor the RA contain a statute of limitations.[37]  The Court must

therefore borrow a statute of limitations from the most analogous state causes of

action.[38]  District courts in our Circuit have determined that the two Ohio statutes most

analogous to Title II of the ADA and § 5 of the RA are either the state disability-rights

statute, Ohio Rev. Code § 4112.02, or the state personal injury statute, Ohio Rev.

Code § 2305.10.[39]  Both of these state statutes give a two-year statute-of-limitations

period.[40]

---

[34] *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989).
[35] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 601 (1986).
[36] Doc. 35 at 3-8.
[37] *See Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010); *Post v. Mohr*, No. 1:11 CV 1533, 2012 WL 76894, at *4 (N.D. Ohio Jan. 10, 2012).
[38] *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985); *McCormick v. Miami Univ.*, 693 F.3d 654, 663 (6th Cir. 2012).
[39] *See Jones v. City of Akron*, No. 5:16-CV-2587, 2016 WL 6649312, at *4 (N.D. Ohio Nov. 10, 2016); *Post*, 2012 WL 76894, at *4; *McCormick v. Miami Univ.*, 1:10-CV-345, 2011 WL 1740018 (S.D. Ohio May 5, 2011),*aff'd*, 693 F.3d 654 (6th Cir. 2012); *Frank v. University of Toledo*, 621 F. Supp. 2d 475, 483 (N.D. Ohio 2007); *Deck v. City of Toledo*, 56 F. Supp. 2d 886, 890 (N.D. Ohio 1999).
[40] *Baker v. Bryant & Stratton Coll.*, No. 1:17-CV-01705, 2017 WL 6508120, at *2 (N.D. Ohio Dec. 20, 2017), *aff'd*, No. 18-3082, 2018 WL 7132241 (6th Cir. Aug. 31, 2018).

Case No. 1:17-cv-1892
Gwin, J.

Though these statutes of limitations are borrowed from state law, federal law

controls the accrual dates for Stansell's claims.[41]  "The general federal rule is that 'the

statute of limitations begins to run when the reasonable person knows, or in the exercise of

due diligence should have known, both his injury and the cause of that injury.'"[42]

In this case, Plaintiff's cause of action accrued on July 7, 2015—the date Grafton

assigned Plaintiff a cellmate[43]—because Stansell then knew his injury and its cause.

Plaintiff filed his complaint on September 5, 2017,[44] some 791 days later.  Therefore,

Plaintiff's claims are 61 days beyond the statute-of-limitations periods.

Plaintiff's claims are barred unless he is entitled to at least 61 days of equitable

tolling.

### 1.  Equitable Tolling: Exhaustion of Administrative Remedies

For claims subject to the Prison Litigation Reform Act's ("PLRA") exhaustion

requirement—such as Plaintiff's—the statute of limitations is tolled for the period during

which a prisoner is properly exhausting his claims through the prison grievance process.[45]

Here, the parties agree that Plaintiff's claims should receive some tolling during a

portion of the times Stansell pursued his administrative remedies, but they disagree as to

the extent.  Plaintiff contends that his claims are tolled through his "final appeal to the

---

[41] *See Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Bishop*, 618 F.3d at 536.
[42] *Bishop*, 618 F.3d at 537 (quoting *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001)).
[43] Doc. 1-3 at 5.
[44] Doc. 1 at 6.  Under the mailbox rule, Plaintiff's complaint "is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley,* 526 F.3d 921, 925 (6th Cir. 2008).  Moreover, "absent contrary evidence," a prisoner is deemed to have provided the complaint to prison officials for mailing "on the date he or she signed the complaint."  *Id.*  Grafton has submitted no evidence to overcome the presumption that Plaintiff submitted his complaint for mailing on September 5, 2017.
[45] *See Brown v. Morgan,* 209 F.3d 595, 596 (6th Cir. 2000).

Case No. 1:17-cv-1892
Gwin, J.

'ODRC Special Needs Assessment Committee' on February 2, 2017 . . . and a subsequent

appeal on June 23, 2017."[46]

In opposition, Grafton says that Plaintiff's claims should be tolled only for the time

he pursued his first Inmate Reasonable Accommodations Request.[47]  Grafton argues that

Stansell's other myriad appeals were merely surplusage and that inmates are not able to

indefinitely extend the statute of limitations period by continually re-filing administrative

grievances.[48]

The Court agrees with Defendant Grafton.  Equitable tolling of a statute of

limitations while an inmate exhausts administrative remedies lasts only as long as

necessary for exhaustion.[49]

At Grafton, there is a specific process for inmates' ADA-related accommodations

requests.  The inmate first submits an Inmate Reasonable Accommodations Request form to

Grafton's ADA Coordinator.[50]  The form explains that, if inmates are dissatisfied with

Grafton's response to their requests, they may appeal to the Ohio Department of

Rehabilitation and Correction's central Special Needs Assessment Committee.[51]  The

Special Needs Assessment Committee's decision is the final step in the ADA-

---

[46] Doc. 41 at 4.
[47] Doc. 44 at 3.
[48] *Id.* at 1-3.
[49] *Brown*, 209 F.3d at 596 ("Prisoners are . . . prevented from bringing suit in federal court *for the period of time required to exhaust* 'such administrative remedies as are available.'" (emphasis added)); *see also Waters v. Evans*, 105 F. App'x 827, 829 (6th Cir. 2004) ("[T]he statute of limitations which applied to Waters's civil rights action was tolled for the period during which his available state remedies were being exhausted."); *Vandiver v. Corr. Med. Servs.*, No. 1:10 CV 41, 2011 WL 8971412, at *8 (W.D. Mich. Dec. 29, 2011), *report and recommendation adopted sub nom. Vandiver v. Corr. Med. Servs., Inc.*, No. 1:10-CV-41, 2012 WL 3923905 (W.D. Mich. Sept. 7, 2012), *aff'd*, (Oct. 31, 2013) ("[T]he statute of limitations is tolled only until the prisoner receives a Step III response to his grievance or until the date by which the grievance process is required to be completed under MDOC policy.").
[50] Doc. 1-3 at 1.
[51] *Id.*

accommodation request process.[52]  Completion of these two steps administratively

exhausts Stansell's related claim.

Accordingly, Plaintiff's claim is tolled only for the time he pursued Grafton's ADA-

related request process.  Here, the process took 33 days: from July 4, 2015—when he

submitted his first Inmate Reasonable Accommodations Request—to August 6, 2015—

when the Special Needs Assessment Committee denied his appeal.

He is therefore entitled to 33 days of equitable tolling for the period he exhausted

his administrative remedies.

### 2. Equitable Tolling: The Continuing Violations Doctrine

In his sur-reply, Plaintiff argues that his alleged injury is "continuing and ongoing,"

which Stansell argues extends the statute of limitations.[53]  Although not explicitly stated,

Plaintiff appears to be invoking the "continuing violations" doctrine.

The continuing violations doctrine provides that an ongoing, continuous series of

discriminatory acts may be challenged in its entirety—even if some of the acts occurred

outside the statute of limitations—if one of those discriminatory acts falls within the statute

of limitations.[54]

---

[52] *See id.* at 1-4.  In a denial of one of Plaintiff's parallel appeals, the responding Grafton official explained that the adjudication of Plaintiff's first "Inmate Reasonable Accommodations Request" meant that this issue had already been definitively resolved and was not "grievable" through other mechanisms. *See id.* at 10.
[53] Doc. 47 at 1-2.
[54] *Haithcock v. Frank*, 958 F.2d 671, 677-78 (6th Cir. 1992).

The mere adherence to an original decision, however, is not enough to establish continuing violation.[55] A continuing violation exists only when there are "continued unlawful acts" rather than "continued ill effects from the original violation."[56]

Here, Plaintiff is not entitled to equitable tolling via the continuing violations doctrine. Plaintiff alleges only one unlawful act—the assignment of a cellmate. After this discrete act, the cellmate's continued presence is merely a continued ill effect rather than an additional unlawful act.

### 3. Summation

In sum, Plaintiff's injury accrued on July 7, 2015, and he filed his complaint on September 5, 2017—791 days later. The Court subtracts 33 days from this period for equitable tolling. Thus, the total time between the accrual date and the filing date is 758 days. Because 758 days is longer than the two-year (730-day) statute-of-limitations period, Plaintiff's ADA and RA claims are barred from relief.

Grafton has shown that there is no genuine dispute as to any material fact on this question and that it is therefore entitled to judgment as a matter of law.

### B. Grafton Is Immune from Plaintiff's ADA Claim Under the Eleventh Amendment.

Even if Plaintiff's claims were not time-barred, Grafton is immune regarding his ADA Title II claim.[57]

---

[55] *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999) (holding that ODOT's adherence to its decision on a parkway project was not a continuing course of conduct that would support a continuing violation theory).

[56] *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 606 F.3d 301, 308 (6th Cir. 2010); *accord Dixon v. Clem*, 492 F.3d 665, 672 (6th Cir. 2007).

[57] The Sixth Circuit has held that Ohio has waived Eleventh Amendment immunity against Rehabilitation Act claims. *See Nihiser v. Ohio E.P.A.*, 269 F.3d 626, 628-29 (6th Cir. 2001).

The Supreme Court has set forth a three-factor test to determine whether an ADA claim may proceed in the face of a state sovereign immunity defense:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.[58]

At the first step, the Court concludes that no aspect of Defendants' alleged conduct violated Title II. To bring a discrimination claim under the ADA, "a plaintiff must prove that: '(1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program . . . because of his disability.'"[59] The plaintiff also "must show that the discrimination was *intentionally* directed toward him or her in particular."[60]

Here, the arguable "services, programs, or activities" offered by Grafton is access to a toilet, and the summary-judgment record shows that Plaintiff has not been denied this benefit. To the contrary, the record shows that Grafton moved Stansell from a dormitory to a cell containing a toilet, improving his access.[61] And when Stansell complained that he had a cellmate who, at times, had obstructed his use of that toilet, Grafton offered to move

---

[58] *United States v. Georgia*, 546 U.S. 151, 159 (2006); *accord Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010).

[59] *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008) (quoting *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005)), *overruled in part by Anderson v. City of Blue Ash*, 798 F.3d 338, 357 n. 1 (6th Cir. 2015). The partial overruling is inconsequential for present purposes. The third element in *Tucker* required a showing that the discrimination be "solely" because of the disability. *Tucker*, 539 F.3d at 535. *Anderson* simply removed the sole-causation requirement, and the Court has reflected this omission in the quotation above. 798 F.3d at 357 n. 1.

[60] *Tucker*, 539 F.3d at 532.

[61] Doc. 44 at 6 (explaining that Stansell was assigned a cell in lieu of the dormitory due to his medical conditions); *see also* Doc. 1-3 at 6 (stating the same in a response to Plaintiff's administrative appeal).

Plaintiff to a different part of the prison with easier backup access to a public handicap toilet.[62] Moreover, Stansell has offered no evidence that Grafton denial of his single-cell request was *because of* his disability.

Likewise, at the second step, the Court concludes that no aspect of Defendant's alleged conduct violated the Fourteenth Amendment. Plaintiff argues that he states an Equal Protection claim because "only his single-cell ADA accommodation was taken away, [while] all other prisoners at [Grafton] were permitted to keep theirs."[63] However, this claim fails because disabled people are not a "suspect class" for purposes of Equal protection analysis.[64]

Moreover, Plaintiff's allegations do not violate the Due Process Clause of the Fourteenth Amendment, that incorporates the Eight Amendment. No evidence suggests that Grafton was deliberately indifferent to Plaintiff's serious medical needs.[65] Indeed, the evidence shows that it (1) determined that Plaintiff had no medical need for a single cell and (2) offered Plaintiff a cell near handicap bathroom that he could use if his cell toilet was in use.[66]

Because Plaintiff's claims do not satisfy the first or second step of the inquiry, the Court need not reach the third.

Grafton has shown that there is no genuine dispute as to any material fact—it is immune from Plaintiff's ADA claim.

---

[62] Doc. 1-3 at 1-4.
[63] Doc. 41 at 5.
[64] *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 368 (2001).
[65] *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976).
[66] Doc. 1-3 at 1-4.

For both statute of limitations and immunity reasons, Grafton is entitled to judgment as a matter of law on this claim.

## IV.    Conclusion

For these reasons, the Court **GRANTS** Defendant Grafton's motion for summary judgment.[67]

IT IS SO ORDERED.


Dated: January 22, 2020                                    s/          *James S. Gwin*
                                                            JAMES S. GWIN
                                                            UNITED STATES DISTRICT JUDGE

---

[67] Doc. 35.